The PEOPLE of the State of
Colorado, Complainant,

v.

D. Shackelford SHIPP,
Attorney–Respondent.

No. 90SA95.

Supreme Court of Colorado,
En Banc.

June 18, 1990.

Linda Donnelly, Disciplinary Counsel,
John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

David A. Ogilvie, Denver, for attorney-respondent.

PER CURIAM.

In this attorney discipline case, a hearing board of the Supreme Court Grievance Committee (Committee) recommended that the respondent, D. Shackelford Shipp, be disciplined by public censure. After reviewing the findings of fact and recommendation of the board, a hearing panel of the Committee accepted the findings and the recommendation.[1] By order dated April 6, 1990, we directed the respondent to show cause why more severe discipline than that recommended by the Committee should not be imposed. Both the respondent and the disciplinary counsel filed responses to the show cause order. Upon review, we are of the opinion that a sixty-day suspension is the appropriate discipline.

I

The respondent was admitted to practice law in Mississippi in 1971 and in Colorado in 1986, and is subject to the disciplinary jurisdiction of this court and its Grievance Committee.

The respondent and the assistant disciplinary counsel entered into a stipulation of facts which became the basis for the findings of the board. The facts as found by the board are as follows. During the period January through March 1987, Tina Johnson and Thomas Heasty were inmates in the Pitkin County Jail in Aspen, Colorado. Respondent represented Johnson on various matters. Johnson requested respon-

---

1. One member of the panel voted to approve the findings of fact, but favored a thirty-day suspen-   sion.

dent to pay her a referral fee of 10% of any retainers he received from inmates she referred to him for legal services. Respondent agreed and subsequently Johnson referred inmates to respondent on two occasions. Respondent paid Johnson $275 for her services. At about the same time and at the request of Johnson, respondent paid Heasty $125 for referring another inmate to him. Both payments were made in cash at the jail.

■ Respondent stipulated, and we agree, that his conduct violates C.R.C.P. 241.6 and the Code of Professional Responsibility DR 2–103(B) (a lawyer shall not compensate a person to recommend or secure his employment by a client); and DR 1–102(A)(1) (a lawyer shall not violate a disciplinary rule).

## II

In arriving at its recommendation of a public censure, the board considered the American Bar Association, *Standards for Imposing Lawyer Sanctions* (1986). The board noted that although respondent's conduct was knowing and intentional, other factors were present which warranted a public censure rather than suspension. In particular, the board relied on the fact that respondent had no record of prior discipline, Standard 9.32(a); personal financial problems, Standard 9.32(c); full and free disclosure and a cooperative attitude toward the proceedings, Standard 9.32(e); and remorse, Standard 9.32(1).

After submission of the case to this court, we directed the respondent to show cause why more severe discipline should not be imposed. He submitted a response in which he described his initial difficulties in establishing a sound financial basis for his law practice, expressed his remorse for his conduct, and urged us to impose a sanction no more severe than public censure because his conduct "was not a knowing and intentional scheme to solicit clients, but rather was an isolated incident of negligent breach of his duty to the profession, by improperly acceding to Johnson's request for payment." Respondent also argues that because he lives in a small community a public censure will inform the public and the legal profession of the facts of this case. Further, that because he is a sole practitioner, a suspension could result in the termination of his ability to practice within his community.

In reply, the assistant disciplinary counsel contends that a period of suspension is appropriate because the respondent knowingly engaged in conduct that is a violation of a duty owed to the profession. He argues that the payment of referral fees to indirectly solicit clients is an "intrusive imposition on other ethical lawyers and the profession in general. Solicitation, direct or indirect, also corrodes the trust and loyalty inherent in the attorney-client relationship."

■ The recommendations of the Grievance Committee are advisory only. It is our duty to review those recommendations and to increase or decrease the recommended sanction in a proper case. *People v. Berge*, 620 P.2d 23 (Colo.1980). In performing that duty we must consider not only the facts and background of the individual lawyer, but also the effect of the lawyer's conduct on the administration of justice, the profession, and the clients whom the lawyer serves. *See* Standard 1.1, ABA, *Standards for Imposing Lawyer Sanctions* (1986).

■ After considering all of the pertinent factors, we believe that a sixty-day suspension from the practice of law is warranted and now order such suspension, effective thirty days after the date of issuance of this opinion. C.R.C.P. 241.21(a). The respondent is further ordered to pay the costs of these proceedings in the amount of $307.78 by tendering this sum to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80203, within thirty days of this date.

VOLLACK, J., dissents, and ERICKSON, J., joins in the dissent.

Justice VOLLACK dissenting:

I respectfully dissent from the majority's decision to suspend the respondent for a

period of 60 days from the practice of law. In my opinion a more severe penalty is warranted by the respondent's professional experience, the knowing and intentional character of the respondent's conduct, and the financial benefit the respondent enjoyed as a result of his unethical behavior.

The respondent was admitted to the practice of law in 1971 in Mississippi. He moved to Colorado in 1983, and was admitted to the bar of this state in 1986. The respondent's mitigation statement discloses that he had been practicing in Yazoo, Mississippi, for nine years prior to the time he moved to Colorado. In 1987, the respondent agreed to pay Tina Johnson, an inmate of the Pitkin County Jail, a 10–percent referral fee for each inmate of the jail Johnson referred to him as a criminal client. At the time he made the arrangement with Johnson, the respondent was experiencing difficulty establishing a successful civil law practice. The hearing board found that before he entered into the agreement with Johnson, the respondent researched the ethical code and was aware of the ethical prohibition against the conduct which Johnson proposed. The respondent nevertheless entered into the wrongful transactions. After receiving approximately $4,000 in fees from clients referred by Johnson, the respondent delivered $275 in cash to Johnson and, at Johnson's request, $125 in cash to another prisoner named Thomas Hasty. The hearing board further found that the respondent knew it was improper to deliver cash to inmates of the jail.

The hearing board concluded that the respondent's conduct violated DR 2–103(B) ("A lawyer shall not compensate or give anything of value to a person or organization to recommend or secure his employment by a client, or as a reward for having made a recommendation resulting in his employment by a client"), and DR 1–102(A)(1) (violation of a disciplinary rule). The Board also noted that the respondent's conduct may have violated DR 3–102(A) (a lawyer may not share fees with a nonlawyer).

The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) provides in standard 7.2 that "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." The respondent's conduct is a serious violation of his duty to the profession and the public. I cannot agree that a 60–day suspension is appropriate in this case. Such discipline would unduly depreciate the seriousness of the respondent's misconduct in the eyes of both the public and the legal profession.

I am authorized to say that Justice ERICKSON joins in this dissent.